MILTON BLOCKER v. THE STATE.

OBSTRUCTING STREETS. *Control by municipalities.* *Code* 1892, §§ 2939, 2945.
> Municipalities governed by chapter 93, code 1892, have exclusive jurisdiction over streets within the corporate limits, and one who, pursuant to an ordinance, closes such a street is not subject to punishment under § 1145 of the code, which prohibits obstructing public highways. This section has no reference to a street in a municipality, though before the creation of the municipality it was part of a public road.

FROM the circuit court of DeSoto county.

HON. EUGENE JOHNSON, Judge.

Appellant was indicted under § 1145, code 1892, for ob-
structing a highway.   The case was submitted to the court
without a jury upon an agreed statement of facts, from which
it appears that appellant, Blocker, placed an obstruction across
a street within the corporate limits of the town of Olive Branch,
a municipality organized under chapter 93, code 1892.   The
board of mayor and aldermen of the town had passed an ordi-
nance directing it to be closed, and had opened other streets for
the use of the public, parallel to the street in question.   Pur-
suant to the ordinance, which it is agreed was in all respects
regular, Blocker closed up the street, and for this act was in-
dicted.   It further appeared that the street was, prior to the
incorporation of the town of Olive Branch, an established pub-
lic road, and, after such incorporation, remained an extension
of such road through the town.

The court below held that the action of the board of mayor
and aldermen was no protection to the accused, and found him
guilty, and from a judgment sentencing him to pay a fine he
appeals.

*Powel & Dabney,* for appellant.

Throughout the United States, townships, counties, and other
local authorities, have general control over the ordinary public
highways, and in incorporated towns this power, as respects
streets, remains ,with the corporate authorities.   2 Dillon on
Mun. Corp., § 534, and cases cited.   This is put at rest by
chapter 93, code 1892, § 2939, which makes each municipality
a separate road district; § 2945 reserves the right to close or
vacate any streets or alleys, or any part thereof, and § 2947
gives them full jurisdiction in the matter of streets.   Section
3000 provides for street commissioners, and defines their duties,
and § 2946 empowers municipalities to exercise eminent domain
in laying out, widening or changing streets.   We find in no
Mississippi case a conflict between the jurisdiction of counties
and municipalities over roads, but in a very recent case from

Idaho, in *The City of Genesis* v. *Lotah County*, 36 Pac. Rep., 701, the court holds that the county commissioners cannot interfere with the streets of a village. See *Railroad Co.* v. *State*, 71 Miss., 253, which holds that the word "highway" does not apply to streets of a municipality.

*Frank Johnston*, attorney-general for the state.

Municipalities, as to streets, are subject to the operation and control of the general laws of the state; and county commissioners authorized to lay out and establish roads within a county, unless their authority is especially restricted in the acts of incorporation, have power to lay out and establish county roads which run through the incorporated town. 2 Dillon on Mun. Corp., 537.

Boards of supervisors have full jurisdiction over roads, ferries and bridges. Constitution 1890, § 170. This jurisdiction can be regulated by law, but cannot be taken away. *Supervisors* v. *Arrighi*, 54 Miss., 668. The statute creates each municipality a separate road district solely for the purpose of working the streets. All the statutes and the constitution should be taken together in ascertaining the intent. Potter's Dwarris on Statutes, 128, 189. In the absence of a statute especially exempting municipalities from the general law of the state, I submit that they cannot exercise any authority over highways of the state which conflicts therewith.

Public highways within a city are for the public, not simply for the municipality within whose limits they may be, notwithstanding the legislature may have given it supervision and control of them. 24 Am. & Eng. Enc. L., 32.

WHITFIELD, J., delivered the opinion of the court.

The question presented by the record is whether the ordinance of the town of Olive Branch, a municipality governed by chapter 93 of the annotated code of 1892, closing and vacating Blocker avenue, was a good defense to appellant, who was in-

dicted under § 1145 of said code for obstructing a public high-
way. Section 2923 provides: "Each . . town . . which is in-
corporated, shall be governed by the provisions of this chapter."
Section 2939 provides: "Each municipality shall constitute a
separate road district," and provides how streets shall be worked.
Section 2945 provides that the municipality shall have power
to "close or vacate any street or alley, or any portion
thereof." Section 2946 provides that the municipality shall
have power "to exercise the right of eminent domain in the
laying out of streets, avenues, alleys and parks, and in
straightening or widening the streets, or changing the grade
thereof," etc. Section 2947 vests the municipalities with full
jurisdiction in the matter of streets, sidewalks, sewers and
parks; to open, lay out and construct the same; to repair,
maintain, pave, sprinkle, adorn and light the same. Section
3000 clothes the street commissioner with general control of the
streets, etc., and makes it his duty to "see that they are al-
ways kept in repair," and to "have them worked," etc. He
is city "road overseer." The "full jurisdiction in the matter
of streets" given by § 2947, is the complement of the "full
jurisdiction over roads, highways," etc., so far as related to
"matters of county police," given by § 289 to the board of
supervisors. The fullest and completest power over streets is
given the municipality by the sections quoted, and by various
others, as §§ 2929, 2931, 2933, 2936.

The scheme provided by this chapter for the government of
cities, towns and villages is one admirable in its whole and in
its details, and is intended to stand apart to itself as the law of
such municipalities, except when otherwise specially provided.
The town, so far as highways are concerned, is a "separate
road district;" its "street commissioner is its exclusive road
overseer;" full jurisdiction over its streets is vested in the
town authorities—theretofore in the board of supervisors whilst
the streets were county highways. Whenever any town adopts
this chapter as the law of its being, the jurisdiction over the

public roads and highways within its limits, theretofore in the board of supervisors, vests thenceforward exclusively in such town. This must, of necessity, be so. Endless confusion would result from holding that the board of supervisors and the board of mayor and aldermen of the town have concurrent authority. The principle is stated by Chief Justice Beasley to be that general laws relating to highways " do not apply to the streets in towns and cities the charters of which confer on the corporation the authority to regulate the streets, on the principle that the general legislation on a particular subject must give way to the special legislation on the same subject." *State* v. *Morristown*, 33 N. J. Law, 61. The whole matter is fully discussed in *State* v. *Jones*, 18 Tex., 878, 879, the court concluding: " No two independent bodies can exercise unlimited control over the same subject-matter at the same time without giving rise to conflicts and collisions which the law never intended, and which the people would never tolerate." This was a striking case. Jones was indicted, as road overseer, for not keeping the road in repair. There part of a public road, upon the incorporation of the town of Goliad, lay wholly within its limits, and this specific part of said road was set apart by the county authorities as a public county road, and Jones directed to work it. It was held that the indictment should be quashed, because the county authorities were without jurisdiction over that part of what had been a public county highway. Precisely the same point, on entirely similar facts, was ruled the same way in *State* v. *Mainy*, 65 Ind., 404. The same doctrine is emphatically announced in *Ottawa* v. *Walker*, 21 Ill., 609, the court saying: " The power, in its very nature, would seem to be inconsistent with its joint or concurrent exercise by the two bodies, and, even if the city charter was not subsequent in date, unless it plainly appeared from the language employed that it was intended to be joint or concurrent, it would be held that the power was exclusive in the commissioners beyond the city limits, and exclusive in the common council within

their jurisdictional limits, and neither have any power to perform any acts in reference to this subject beyond their respective limits." Judge Dillon cites authorities to the same effect in 2 Mun. Corp., § 676, *et seq.* (4th edition); but, what is more to the purpose, in delivering the opinion, the supreme court of Iowa, in *McCullom* v. *Black Hawk Co.*, 21 Ia., 409, lays down the doctrine with great distinctness, laying stress upon the point that there, as here, the town was a "separate road district," saying: "It would not do to give two distinct sets of officers control over the same bridge. There would, or might be, conflict of jurisdiction. The money and means they expend come from different sources, and cannot be applicable to the same objects. Therefore, when the liability of the city attached, that of the county ended, and that of the city attached when its organization was complete." The very recent case of *City of Genesis* v. *Lotah Co.*, decided by the supreme court of Idaho, May 10, 1894, rules the point the same way, and on the same ground of the city's being a "separate road district," the court saying: "Section 2230, subdivision 16, revised statutes, gives towns and villages the right to keep in repair all highways, streets and alleys; and, as two different boards cannot exercise the same power in the same jurisdiction at the same time, this right must be held to be exclusive. If exclusive, then the boards of commissioners cannot authorize its road overseer, or any road overseer, to go within the limits of any organized town to repair, or in any way interfere with, its streets or alleys. When a town or village is a separate road district, money raised by taxation for road purposes 'must be expended in said town or village.' " 36 Pac. Rep., 701. By far the clearest and most luminous statement we have anywhere found on this subject is that of Mr. Elliott, in his recent work on roads and streets. Says he, p. 312, *et seq.:* "It is obvious that the officers having control of county affairs cannot justly be permitted to control the streets of a city, and for this conclusion there are at least two satisfactory

reasons. It would violate the principle of local self-government to permit officers elected to govern one corporation to control the public ways within another and distinct corporation, for the officers of one corporation cannot be considered the representatives of another and different corporation. . . Officers chosen to conduct county affairs cannot, in the nature of things, be presumed to possess such authority as will enable them to to control streets; and the liability of a town or city is radically different from that of a county.'' He then points out the fallacy of the reasoning in *Baldwin* v. *Green*, 10 Mo., 410 (note 1, p. 313), and *Benington* v. *Smith*, 29 Vt., 254 (note 1, p. 314), and concludes: ''There is some conflict in the cases as to whether the erection of a municipal corporation does, of itself, oust the jurisdiction of the county officers over existing highways. Our opinion is that, as soon as a town or city is incorporated, the public ways . . come within the jurisdiction and control of the new public corporation, unless the statute expressly or impliedly continues the authority of the county. . . The erection of such a corporation is, in truth, simply the creation of a new instrumentality of government; it comes into existence with the rights, powers, and duties of a governmental subdivision, and it is but reasonable to conclude that, as to such matters as streets, which peculiarly pertain to municipal corporations, the authority of other governmental corporations is excluded. There is an essential difference between cases where the matter is a general governmental one, and where the matter is so peculiarly one of municipal control and local interest as streets. . . In creating a town or city, the legislature must be deemed to do so with knowledge of the general principles which apply to such political subdivisions, and with the expectation that they shall exercise the usual jurisdiction of such subdivisions exclusively, and not divide it with other public or *quasi* public corporations. Acts for the incorporation of towns and cities are directed to a particular subject, and are of greater force, so

far as the subject and its incidents are concerned, than laws of a wide and general sweep. The object of incorporating a town or city is to invest the inhabitants of the locality with the government of all the matters that are of special municipal concern, and certainly the streets are as much of special and local concern as anything connected with a town or city can well be. It ought, therefore, to be presumed that they pass under the exclusive control of the municipality as soon as it comes into existence under the law.'' See, also, *Railroad Co.* v. *State*, 71 Miss., 253.

We think the provisions of chapter 93, quoted by us, put the streets expressly under such exclusive control of the town of Olive Branch as soon as it went under the operation of said chapter. It is worthy of comment that the context of § 1145, treating of ''road overseers,'' ''mile boards,'' etc., seems to indicate that the highway referred to in § 1145 is not the street of a town, and this is strengthened by § 1148, which makes punishable '' racing or shooting in any street or public highway,'' distinguishing between them, and they are so distinguished also in chapter 93, § 2970; but this by way of comment only.

We are, therefore, of opinion that the ordinance constituted a perfect defense. The judgment is reversed, the indictment quashed, and the appellant discharged.

*So ordered.*