VILLAGE OF RIDGELAND *et al. v.* MADISON COUNTY.

(Division B.   June 3, 1929.)

[122 So. 753.   No. 27978.]

*H. B. Greaves,* of Canton, for appellants.

614

*A. K. Foot,* of Canton, for appellee.

616

GRIFFITH, J., delivered the opinion of the court.

Under chapter 278, Laws 1924, amended as to additional highways by chapter 218, Laws 1926, and chapter 45, Laws 1928 (Ex. Sess.), a system of state highways was "established, created and defined;" the first named among them being a central highway beginning at the Tennessee line near Horn Lake, and extending through Canton and Jackson, to the Louisiana line near Osyka. By the original chapter the procedure was established by which the maintenance of these state highways was to be taken over by the state highway department. In this general connection a more expeditious method was provided by chapter 155, Laws 1928, for the coordination of these highways with the machinery of the general government in the matter of federal aid projects.

A link in the state highway above mentioned extends from the northern terminus of the Hinds county concrete highway (F. A. P. No. 79-A) near Tougaloo station northward to Canton. On July 20, 1928, such steps and proceedings had been taken by the county of Madison in cooperation with the state highway department that the said link had been surveyed, complete specifications had been made up for a modern concrete highway, and the project was ready for the inspection of the federal engineers. This survey does not immediately follow the old graveled road from Tougaloo to Canton, but is laid out east of said old road, and on an entire new location about one-fourth to one-half mile distant therefrom. In passing through the village of Ridgeland, the new route runs some eleven hundred feet east of the old road—called in the village East Railroad Street—and does not follow any street, but runs at an acute angle across several of the streets, one of which is a graveled street and the others are "undeveloped" streets, as they are termed in the diagram furnished in the record.

On the date aforesaid, a designated federal engineer in collaboration with a state district engineer made a complete inspection of this link as proposed on said new route, and made up a detailed report of his findings. Among other things he reported: "(3) Present Road. The present road is surfaced with gravel sixteen feet wide and is poorly maintained. The alignment, as well as gradient, is reprehensible, sharp right angles exist as well as steep grades and short verticle curves, prohibiting a safe sight distance. The proposed project is on an entire new location, about one-half mile east of the I. C. Railroad." He then proceeds with twenty-one different items covering all the details of the project as surveyed and planned, and concludes: "Recommendation. The route of which this project forms a part is recorded as the future main trunk line for the state. The proposed improvement on the location and grade as established, is

considered satisfactory and in keeping with the import-
ance of the road. It is recommended that the proposed
improvement be approved for federal aid participation.''
This report was accepted by the federal district engineer,
and was forwarded to Washington, and on the 8th day of
January, 1929, the report was approved and the project
accepted as F. A. Project No. 79-B, and the sum of one
hundred twenty-two thousand, six hundred eighty-nine
dollars and fifty-six cents was set apart by the general
government to aid in the construction. The county of
Madison has procured all the funds needed on its part as
well as all the rights of way, and has taken and completed
every necessary step, and the new road is being con-
structed.

The village of Ridgeland has objected to the change of
location of the route, and now insists that the county has
no right to build said concrete highway through the mu-
nicipal territory without the consent of the village au-
thorities, or, if mistaken in this, that the route must fol-
low one of the established streets of the village. The
road contractors were warned by the village officers of
this insistence, and the village has threatened to enforce
a village ordinance making it a misdemeanor to work on
the proposed new route within the limits of the munici-
pality. The county has enjoined the municipality from
interference, and the chancellor has overruled a motion
to dissolve the injunction.

In the days of the wagon and the one-horse shay it was
the law that the jurisdiction of the county in respect to
roads and streets ended at the line of the municipality,
and that within the incorporated territory the authority
of the municipality was exclusive. Such was the law
when *Blocker* v. *State,* 72 Miss. 720, 18 So. 388, was de-
cided in 1895. Roads and streets were then of little more
than local concern. But the advent of the automobile
and the requirements of modern conditions brought about
by the general use of that new means of transportation

have worked a gradual readjustment of our laws to meet the new conditions. These readjustments have been cautiously advanced, but nevertheless have been definite. At first, it was provided with deference to the municipalities that in constructing the main lines of highways through a municipality the county could do so only with the consent of the municipal authorities, and this is still true as to any except state highways established as such by an express legislative act.

But, at the regular legislative session of 1928, the law-making body laid aside all these municipal reservations so far as concerns the trunk line roads designated in legislative acts as state highways, and there was enacted chapter 82, Laws 1928. That law reads as follows: "The board of supervisors of any county in the state, may in their discretion, construct and maintain, or contribute to the construction and maintenance of, any state highway previously established according to law, within or without the corporate limits of any city, town or village." The above quoted sentence is the whole of that act, and there is not a word of reservation or exception.

"In this state the power of the legislature over municipal streets is plenary, unless in exceptional cases not here presented. It has the power to divest the municipalities of all control over their streets, and authorize their use by corporations without compensation to the municipality. It is a question of legislative will and intent, not a question of power." *Canton* v. *Cotton Warehouse Co.*, 84 Miss. at pages 290, 291, 36 So. 266, 271 (65 L. R. A. 561, 105 Am. St. Rep. 428). The village concedes the law as stated in the foregoing quotation, but contends that the term in the Act of 1928, "state highway previously established according to law," means as previously established by the municipal authorities, so far as concerns that part of the highway which runs within the municipality, which is to say that within the municipality the highway must run according to the streets as already

laid out and in existence in the municipality. We can find no warrant in the words of the act for that construction, nor anything in it from which we could infer any such an intent. On the contrary, we think the legislature meant exactly what is said in the act. In any event, there is nothing shown which would justify us in engrafting any additional words or provisions upon it, and we must therefore interpret it as it is written, from which it follows that the holding of the chancellor was correct.

*Affirmed.*